You may be seated. Our first case of the morning is in re the Marriage of Oden for the appellate Mr. Frazier, for the appellate Mr. Bonjean. Is that how you pronounce it? Bonjean. Bonjean. It's French for millie, your honor. For the millie. You may proceed. Good morning. May it please the court, Mr. Bonjean. My name is Rick Frazier. I represent Ed Oden in this appeal. Mr. Oden appeals an order finding him in contempt of court for not producing some items concerning an auction which was the result of several items not being sent to the auction pursuant to the court's order. Mr. Oden raises three issues on appeal. The first of which is whether the trial court appropriately found him in civil contempt of court when its sanction was not coercive in attempting him to comply with the court order of producing the items, but was rather punitive in that it amounted to a fine, a violation of in re marriage of the carpel, which is a 1992 case from this district. Some of these issues which are raised, which are three of them, overlap on some of the arguments, and I apologize to the court for that. But the reason that this order for him to pay $9,000 and somewhat was because it was well in excess of the value which was established at the hearing concerning these missing items. As the court is aware, in marital cases when trying to assign a value to marital property, the fair market value is the baseline to use in determining the value of items, in this case personally concerning some certain farm tools and other items. What the court did was basically adopt the testimony of Mrs. Oden, which she testified that the cost of these items were things that she believed were replacement costs as opposed to fair market value. She had acknowledged on cross-examination that these items that she used as the value were new, obtained from various catalogs. She acknowledged that she did not go to any auctions to try to get what the fair market value of these missing items were. In fact, in one case, in one of the items, she testified that her son-in-law told her that he talked to somebody or read in a catalog. She didn't have access to the personal property, though, did she? She knew what they were, and she described those in her testimony as to exactly what those were. She didn't know exactly how old some of the items were. In fact, she acknowledged that in cross-examination. I'm just curious, how would you establish the fair market value when you get an appraisal from, I guess, an expert? An expert is one. Other times in family law cases, what one would do for non-farm related items would say, I've been to a garage sale, and try to produce your own credentials as to how you base your opinion on the value of the items. Wouldn't an appraiser need to see the property? Or photographs, or a related one, or at least listen to a description of the property to see what condition it would be in. And Mrs. Oden certainly had... Did she have access to get photographs? I don't believe on all of the items that we're talking about, but certainly these are items that were in the possession of both parties for years and years of their marriage. I don't know how familiar she actually was, but I don't think that was really produced in the testimony of either party. But these were items that were requested to be produced by the trial court at the auction. The second issue which is raised, again, is based upon the hearsay nature of establishing these values of the property. Again, no expert was produced. They were based upon the purchase of new items. In fact, Mrs. Oden, I think, acknowledged that... Or Mr. Oden testified that the scaffolding was at least 40 years of age, and Mrs. Oden based her testimony on what new scaffolding would cost. Again, there was hearsay, and sometimes double hearsay, that was used to establish the value of these items. And again, it was not based upon the fair market value. Finally, the last issue raised is the amount that was, again, used by the court in order to punish Mr. Oden, which was $9,905.32. If this were marital property, which the court determined that it was, Mr. Oden should be given a credit for half of that, which the court determined was the value of the property which was missing. He simply used the full amount of the alleged missing items, and he reduced it down by a couple of items that he found were not proved. But Mr. Oden should have been given a credit for half of that, given the fact that it was marital property, and pursuant to the terms of the judgment of disillusionment, he was entitled to one-half of the proceeds of the auction. The trial court did not award him half. He just simply entered an amount of $9,900. Did the trial court explain why it did not award him half? I don't believe so. I may be mistaken on that. I reviewed the transcript again last night, but I don't believe that it did. If there's no further questions, I'd ask the appellate court to reverse the trial court. Thank you. May it please the court, Mr. Frazier. I'm Robert Monjean, and I represent Mrs. Oden. Curiously, this case has been up before the appellate court twice, once on the personal injury settlement years ago, or a year, almost two years ago, and now here on a contempt issue. We had a long-term marriage. Parties worked hard, had a farming operation, and a house-raising business down by the river, raising houses, putting them on stilts for the floods. These parties were intricately aware of the costs and the value of these various items that we're talking about. The trial court had heard testimony throughout the course of what is about a four-year case. There have been periodic problems with compliance with court orders. As this court notes, this is the fifth petition asking that Mr. Oden be held in indirect civil contempt. Specifically, there was an auction of the farm equipment and other personal property. The day before the auction, we're in court addressing a number of issues, and the trial court again reminds the parties, I want all of that property brought to the auction that's supposed to be there. Well, that didn't happen. In fact, right before the trial court makes that comment, I had brought up the toolbox and the tools in it that were in the back of Mr. Oden's truck. Now, I tried to deal with that during the course of the auction, but I think the receiver just didn't want to resolve that issue or get in the middle of it while he was trying to have an auction conducted. So, we filed a petition. Adhering on that petition, we had the problem of trying to present evidence as to the value of the items that were missing. And I mean problem. In the brief from the appellant, they suggest that we should have gotten an expert to give us the value. Well, there's going to be hearsay problems somewhere because how is the expert going to know what the value is? Because the expert, other than probably the toolbox that may still be in the back of Mr. Oden's truck, we are not going to have access to that property. So, is my client then going to tell the appraiser, in this case an auctioneer probably, what this property looked like, what condition it was in? I mean, there's still going to be a hearsay problem here. The question is, at what level is the hearsay issue raised to the point where the evidence isn't even competent? I don't think that's what the trial court found. I think the trial court found that what my client testified to was the best evidence available as to value. Was it the fair market value? No. But she really didn't have the ability, and I don't think today has the ability, to produce for the trial court the fair market value of items that she doesn't have access to. That was taken by Mr. Oden, and at the transcript we know the toolbox is there, but Mr. Oden, as to the vast majority of the other items, said, I don't have them. They were sold to the auction. I don't know what you're talking about. So there's never going to be access to these items to value. That's the problem that my client has. And they want to hold her to say, hey, you didn't produce competent evidence as to the fair market value of this hearsay. Although, curiously, when Mr. Oden put on his case at that hearing, he used the same kind of evidence and the same kind of catalogs to suggest the value of items. He said, my client didn't bring to the auction. So apparently, the methodology that my client used in presenting evidence was the same methodology that Mr. Oden used, and now he complains about it here in today's court. Why wasn't Mr. Oden assigned one half of the value of the property? Well, I understand that argument, but the problem I have with that argument is Mr. Oden has the property. He actually has the items physically. So under that theory that the appellate proposes, Mr. Oden, in a sense, gets half the money and all the property. My client gets half the money. Well, that's not fair. That's the problem with their argument. Their argument focuses on the idea of an auction and that if there was $9,000 that wasn't brought to the auction, each party would have gotten half. That's true and that makes sense, but that argument forgets the fact that, wait a minute, where are all the items of property? They're all in the possession of Mr. Oden. So Mr. Oden has the property and half the money? That's not fair. So I never did understand that argument. I understand the idea of just the auction sense, but it forgets the part about Mr. Oden having all the items of property. All the trial court was trying to do was to say, you didn't bring the property, you get to have the property, you're going to pay her the value as best it can be determined of what you didn't bring to the auction. Is a contemporary seating bill the proper vehicle to get that result, an indirect civil contemporary seating bill? Is it the best vehicle or is it a vehicle? Is it inappropriate? I think it is. Would I have preferred, as I stand before this court today, for the order to have said that you can purge yourself for the contempt by paying the $9,900? Sure, I'd like to be able to go back and put that language in the order. I think that's what the court was doing. The order doesn't clearly say that, but I think that's what the order accomplishes. The purge provisions are in my mind are two. One, you're going to pay the $9,900, whatever the exact number is, and you're going to pay her attorney fees. Mr. Oden's paid those amounts, he's purged himself from the contempt,  Should I have filed a petition to enforce the order? I guess that would have been a possible approach. What did the auction bring, ballpark? Oh, $200,000 to $300,000. There's some big farm equipment in there. We're not talking about the biggest part of the auction, unfortunately. But, yes. So it was a substantial auction. So, from our perspective, the burden of proof is on the appellant to show that the court abused its discretion. And I just don't see that that's what's happening. I don't think they've met their burden. The court has done the best it could do with Mr. Oden not complying with its order. And the sanction and the purge with the values were the best it could possibly be determined under the circumstances. And under that set of facts, the court did not abuse its discretion, and its decision should be withheld and upheld by this court. And I would ask the court to do so. Mr. Bongean, do you agree, though, that indirect civil contempt proceedings, the purpose is to coerce compliance with the court's order? Yes, I do. In this case, he was held in contempt following the auction. Yes. So how can the court coerce compliance with the order through a civil contempt proceeding to have brought certain property to the auction? Well, and I think it's a nuance of saying you didn't bring it, so I'm going to coerce your compliance with the order in the sense of saying you're going to pay the cost of the items you didn't bring to the auction. How is that different than punishing him or sanctioning him for violating the court order? I think the problem is it has that smell, and certainly that's been what the appellant has pushed before this court. They've tried to hit the amount of the figure to bolster their position that it's punitive only and not coercive. And yet I think it's also coercive in the sense that by paying these funds, he is now complying with the court's order. It's a court order from actually two court orders, the day before and a previous order. And I understand, and I think it's very close under the circumstances, because it does have a little bit of a feel that it's punitive. And again, the appellant, I think wrongly, tries to bolster that argument, talking about the $9,900 amount as being punitive, when I absolutely do not think that's true or fair under the circumstances. So I understand the court's concern, but I still think it's coercive. And again, I think part of the problem is the wording in the order itself that could have made this a lot easier or maybe would have meant we weren't even here today. Thank you. We're not taking the position that in every case, in a marital family law case especially, that a party has to retain an expert witness to provide an opinion on value of property. And in fact, although had Mrs. Oden done that, and as we know in Wilson v. Clark, an expert is allowed to rely upon hearsay, as long as that is typical information that an expert would rely upon in giving an opinion, you can rely upon hearsay or even the opinion of somebody else. What our position is, is that Mrs. Oden did not do a very good job in trying to establish what the fair market value was. In fact, she acknowledged this is replacement cost. This is not fair market value. I didn't go to one option. I didn't go to one flea market. In fact, one of the items at issue is a riding lawnmower, which is not that of an unusual of an item such as an I-beam or a scaffolding. It's a riding lawnmower. She produced a new riding lawnmower and acknowledged on the stand that the riding lawnmower was old. Mr. Bonjean states, well, Mr. Oden has this property. Well, apparently the court believed that, although Mr. Oden testified, well, no, this item was on this piece of property when we sold it. The last time I saw this other piece of property was several months ago at a rental house. So, I mean, he provided an explanation of where he believed it was. In fact, Mrs. Oden's testimony was, well, the last time I saw that was at a rental house. So it was never really established where or who had this property. And some of it, as the justice pointed out, is that it was very minor compared to the big ticket items that were produced for auction. So it's not as if Mr. Oden was somehow hoarding this property for the value of it. The testimony was, you know, I don't know where it is or it was sold with this piece of property. Thank you. So, we would ask, again, that this court would reverse the trial court's findings. Reverse and remain aware? Or remain back. I would suggest it simply be reversed. But I believe if the vehicle, if this court finds that the vehicle used by the court was erroneous, perhaps an alternative vehicle could be used in order to try to establish their claim. Thank you. Thank you. I take the matter under advice.